## SUPREME COURT—IN BANCO.

### OCTOBER TERM—1858.

LOT KAMEHAMEHA *vs.* J. D. KAHOOKANO, M. KENUI AND A. MOKU.

The Guardian of the plaintiff, in 1848, previous to the enactment of Section 54 of the " Act regulating guardians and wards," passed on 4th August, 1851, rightfully exercised under the law of this Kingdom, the control and management of the plaintiff's property.

A grant of a right of way over land of the ward by the Guardian, or any conveyance of any part of his estate, considered as of the same force and binding effect, as if done by the ward on arriving at full age.

In the absence of any statutory requirement on the subject, no particular form is requisite in the dedication of land to the public use by the owner of the soil. It may be either express or implied.

The question whether such dedication was made, is one of intent, to be decided upon the evidence, and if found to have been made for a special purpose, the public must take and enjoy the way *secumdum formam doni*.

Judge ROBERTSON delivered the judgment of the Court as follows :

This is an action of trespass, brought at the last October Term of this Court, by the plaintiff, Prince Lot Kamehameha,

to recover damages from the defendants for cutting down a fence and entering upon a certain premises, the property of the plaintiff, situated in the town of Lahaina, and known as the "Hoapili premises." The defendants admitted the plaintiff's ownership, and their entry upon the premises, as alleged ; but filed a plea of justification on the ground that there is a public right of way over the premises in question. The principal object of the suit being to test the validity of the claim to a right of way, it was stipulated by agreement of the parties that the case should go to trial before the Court, without the intervention of a jury, and that the plaintiff should not insist on the damages claimed in his petition.

The testimony adduced before us is quite voluminous, and somewhat conflicting in its character, and we shall not attempt to rehearse it at length. We understand the evidence as proving, in substance, that previous to the erection of the Protestant Mission Church, at Lahaina, which was built about the year 1832, there was a pathway running from the land called "Waiokama," through what is now the Church Lot and the Hoapili Premises, on towards the north side of Lahaina, which pathway was not, however, the main public pathway (or *alaloa*) which was situated some distance mauka, near the course of what is now, and has been since 1850, a public street ; that soon after the erection of the church a stone wall was built by the people, separating the Church lot from the Hoapili premises, with a gate or opening, however, through which the people went into and out of the Church lot by the old pathway to "Waiokama;" that about the same time the late high chief Hoapiliwahine, the wife of Hoapili, the then Governor of the Island of Maui, took up her residence upon what is now the plaintiff's premises, for the purpose of being near the Church, in the prosperity of which she and her husband took a lively interest, and she being also at the time feeble in body ; that previous to the erection of the stone house, which now stands upon the premises, Hoapiliwahine lived in a grass house near the foot path, where the plaintiff, her adopted son, according to ancient custom, and at that time an infant, lived with her under the care of his kahu ; that on account of the dust raised by the people passing through the premises in the dry season,

and the inconvenience and annoyance resulting from the use of the pathway by the public, Hoapiliwahine placed a restriction upon it, permitting only the chiefs and upper class of people, with the pastor and his family, to pass through her premises, while the mass of the congregation went to the church by the *alaloa*, or public road, which runs along the mauka side of the church lot, except when the *alaloa* was rendered impassable by the winter rains, when she allowed all to pass through her premises; that the pathway was shifted from its original track so as to cross the Hoapili premises farther makai, and the restriction upon the use of it was continued, but with abated stringency, up to the time of Hoapiliwahine's death, which occurred in the year 1842, two years after that of her husband; that after the death of Hoapiliwahine, the stone dwelling house and the premises in question were almost entirely unoccupied for a number of years, and fell into a state of dilapidation; that from the time Hoapiliwahine died until the year 1847 or 1848, the title to the premises was unsettled, but at that time it was decided by the chiefs in council that the plaintiff was the owner, upon which occasion possession was relinquished by Mr. Kanaina to Governor Kekuanaoa, the plaintiff's father and natural guardian, who had the care and control of his property; that in 1847, or the early part of 1848, Polea, as land agent of Mr. Kanaina, in carrying out some instructions given him in relation to inclosing the premises, shut up or obstructed the pathway, so that a petition or complaint was sent to the Legislature by certain church members, praying that the way might be re-opened, as a way to the church; that soon after this Mr. John Ii being about to visit Lahaina on business, was requested by Governor Kekuanaoa to attend to this matter, and to set off a road for the people on the makai part of the Hoapili premises, in accordance with the prayer of their petition; that Mr. Ii accordingly, finding the way shut up or obstructed by a stone wall built by Polea, caused the obstruction to be removed, re-opened the way and set off a road about twenty feet in width, for the people, through the premises in question, to the church gate; that subsequently the road was worked and put in order, under the direction of the lunaauhau of the district, who at that time had control of road labor under the Governor; and that from 1848

until 1857 the road was used by the public, as a way to the church, without interference or dispute.

Upon this state of facts, it is contended by the defendants that the public have acquired a right of way over the premises in question, either by prescription, or by express grant or dedication.

So far as the defense rests upon the claim to a right of way by prescription, we are clearly of the opinion that it cannot be sustained. It appears by the evidence that the ancient pathway from "Waiokama," through the land now occupied by the church and the Hoapili premises, was but a by-path, crossing what was then uninclosed land, and not a public path for general use leading through the district, or around the island. Or, if it can be considered to have been originally a public way, in a proper sense, its character as such was entirely changed, by the inclosing of the church land and Hoapili premises, and the erection of gates, shortly after the church was built, so as to prevent its being used as a public thoroughfare for all purposes. Its use even as a way to the church was repeatedly and effectually interrupted by Hoapiliwahine; so much so that we cannot regard the partial enjoyment of the way during her life time, as anything more than a permissive use. It will not be denied for a moment, by the defendants, or by any one acquainted with the state of this country previous to the grant of a Constitution, in 1840, that Governor Hoapili, or his wife, Hoapiliwahine, could, at any time before that, have shut up the pathway in question, and entirely precluded all persons from using it, their will being law in that respect, subject only to the control of the King himself. Hoapiliwahine did, in fact, stop all persons from using the ancient path across her premises, but permitted the privileged class to use a pathway to the church, on the track of the road afterwards set off by Mr. Ii, near the makai boundary of the premises. The use of the way by the public, from the death of Hoapiliwahine up to the time of its interruption by Polea, was too short to found a right by prescription. And, whether long or short, it ought not, perhaps, to be allowed to operate against the right of the plaintiff, inasmuch as during that period, the title to the premises was in an unsettled state. For these reasons, we do not consider as established, the justi-

fication set up by the defendants, on the ground of a public right of way by prescription.

But it is argued that, in the year 1848, there was an express grant or dedication, to the public, of a right of way to the church, over the Hoapili premises, by Governor Kekuanaoa, while acting as the guardian of the plaintiff, and having the care and control of his property, he being then a minor.

To this it is objected that Governor Kekuanaoa was not the guardian of the plaintiff's estate; that even if he had been it is necessary for the defendants to show a written grant, under seal, and for a valuable consideration; and that any such grant made by Governor Kekuanaoa as such guardian, would not bind the plaintiff after he became of age.

That Governor Kekuanaoa, in 1848, as the natural guardian of the plaintiff, rightfully had and exercised, under the law of this Kingdom, the control and management of the plaintiff's property, is, we think, too clear a proposition to admit of a question; and that any grant of a right of way over the plaintiff's land, or any conveyance whatever of any part of his estate, made by Governor Kekuanaoa during the plaintiff's minority, and before the enactment of section 54, of the "Act regulating Guardians and Wards," passed on the 4th day of August, 1851, must be considered absolutely conclusive and binding upon the rights of the plaintiff, is, in our opinion, equally clear.

The act of the plaintiff's guardian being considered then, in this instance, as of the same force and binding effect, as if the plaintiff had been a person of full age and done the act himself, is it necessary, in order to sustain the defendants' plea of a public right of way, by grant or dedication, that such grant or dedication should appear to be evidenced by a written instrument, under seal, and to have been made upon a valuable consideration ? In answer to this, it might, perhaps, be contended, on the part of the defendants, that so far as the present case is concerned, this point is covered by the 54th section of the Act of 1851, already referred to. But, apart from this special consideration, we are of the opinion that the question must be decided in the negative. We do not think that the position that a grant or dedication of a way to the public must be evidenced by a written instrument, and appear to have been made for a

valuable consideration, can be sustained upon authority. On the contrary, we believe it to be sound law that, in the absence of any statutory requirement on the subject, no particular form or ceremony is requisite in the dedication, by the owner of the soil, of land to the public use ; and that such dedication may be either express or implied. (See Beatty & Ritchie *vs.* Hurtz *et als.,* 2 Peters' Rep., 566; Rex *vs.* Lloyd, 1 Campbell's Rep., 260; Rex *vs.* Barr, 4 Campbell's Rep., 16 ; the Marquis of Stafford *vs.* Coyney, 7 Barnewall & Cresswell's Rep., 257; Wood *vs.* Veal, 5 Barnewall & Alderson's Rep., 454 ; Hobbs *vs.* Lowell, 19 Pickering's Rep., 405.)

In the present case, it is contended that there was an express grant or dedication of a way to the public, over the plaintiff's premises. The question whether there was or not, is a question of intent, to be decided upon the evidence presented. Did Governor Kekuanaoa cause a way to be opened, and set off to the public, with the intention that it should be used by the public as a way to the church, without restriction or limitation ? After careful consideration of the testimony, we are satisfied that he did so. The setting out of the way was an open and deliberate act, no circumstance transpired showing an intention to exercise any control whatever over its future use, or to indicate that the setting out of the way was to be understood merely as a license revocable. The public entered upon, and used it, without dispute or molestation, for a period of nine years, six or seven of which elapsed after the plaintiff attained the age of majority. The dedication to the public use was complete and unreserved, as a way to the church, but not for any other purpose ; and the public must take and enjoy *secundum formam doni.*

Let judgment be entered as of the last October term, in favor of the defendants, with costs.

Messrs. Harris and Davis, for plaintiff.

Messrs. Austin and Kauwahi, for defendants.