HAWAIIAN TRUST COMPANY, LIMITED, EXECU-
TOR OF THE WILL OF BERNICE PARKE WAL-
BRIDGE, DECEASED, *v.* DESMOND STANLEY.

No. 1970.

SUBMITTED NOVEMBER 10, 1930.            DECIDED DECEMBER 18, 1930.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.
(Parsons, J., dissenting.)

This case is submitted to us by the Hawaiian Trust
Company, Limited, executor of the will of Bernice Parke
Walbridge, and Desmond Stanley, on an agreed statement
of facts. The essential facts are that Bernice Parke Wal-
bridge by her last will and testament made the following
bequest: "I give and bequeath the sum of one thousand
dollars ($1,000) to Patricia Stanley, daughter of Des-
mond Stanley, of Honolulu aforesaid." This bequest is
now in the hands of the Hawaiian Trust Company as
executor of Mrs. Walbridge's will. Desmond Stanley is
the legitimate father of Patricia Stanley, who is a minor
aged three years. Both Patricia and her father are domi-
ciled in Honolulu and the latter is a citizen of the Ter-
ritory of Hawaii. There is no provision in Mrs. Wal-
bridge's will as to whom the payment of legacies left to
minors should be made. No guardian of the property or
person of Patricia has ever been appointed by any court.
The six months' period prescribed by law for the presenta-

.tion of claims to the executor has now expired and the trust company is willing to pay the bequest made to Patricia to whomsoever is entitled under the law to receive it. Desmond Stanley claims that he is by statute made the guardian of his daughter's property and therefore is entitled to the possession of the legacy in question. The trust company denies this claim on the ground that the legacy should only be paid to a guardian appointed by a court of competent jurisdiction and that since Desmond Stanley has received no such appointment he is not entitled to receive the legacy. Desmond Stanley's claim is based solely on section 3033, R. L. 1925. This section is as follows: "The children of a valid marriage shall be denominated legitimate; and the husband of the marriage shall be liable for their suitable and proper support in all respects, until they severally attain the age of majority, when his liability shall cease for further provision. He shall also be entitled to control and manage his children in all respects during their minority, and require reasonable service at their hands. He shall be the natural guardian of their persons and of their property; he shall be liable in damages for tortious acts committed by them, and entitled to prosecute and defend all actions at law in which they or their individual property may be concerned."

It is clear that if the legislature intended by the enactment of this section to declare that every legitimate father of a minor child is *ipso facto* the guardian of the property of such child and therefore entitled to its possession, without requiring anything more to be done to establish his status, that ends the controversy. The statute itself would be a complete and sufficient warrant to the father to possess himself of his child's property and its delivery to him would be fully authorized. If he should seek and receive a judicial appointment as guardian it would be without necessity and if another should be so appointed it

would be without authority. On the other hand, if this was not the legislative intent but if the intent was merely to say that because of his paternity the father of a minor child has the natural and therefore the preferred right to be appointed the guardian of his child's property by a court of designated jurisdiction then the father does not by virtue of the statute become such guardian unless and until his legal status is fixed by judicial action.

In ascertaining the intention of the legislature we must not only consider section 3033 but other statutes associated with it. In chapter 180, R. L. 1925, which relates to guardians and wards, we find the following sections:

"Circuit judges shall have jurisdiction to appoint guardians to minors and others according to law." Sec. 3064.

"If the minor is under the age of sixteen years, the judge may nominate and appoint his guardian, and if he is above the age of sixteen years, he may nominate his own guardian, who, if approved of by the judge, shall be appointed accordingly, and if the guardian nominated by such minor shall not be approved by the judge, or if the minor shall reside without the Territory, or if after being cited by the judge he shall neglect to nominate a suitable person, the judge may nominate and appoint the guardian, in the same manner as if the minor were under the age of sixteen years." Sec. 3065.

"Every guardian appointed as aforesaid shall have the custody and tuition of the minor, and the care and management of his estate, and shall continue in office until the minor shall arrive at the age of twenty years, or until the guardian shall be discharged according to law; provided, however, that the father of the minor, if living, and in case of his death, the mother while she remains unmarried, being themselves respectively competent to transact their own business, shall be entitled to the custody of the person of the minor, and to the care of his education." Sec. 3066.

"Every such guardian shall give a bond with surety or

sureties, to the judge, in such sum as the judge shall order, with conditions as follows:

"First. To make a true inventory of all the real estate and all the goods, chattels, rights and credits of the ward, that shall come to his possession or knowledge, and to return the same into the probate court at such times as the judge shall order;

"Second. To dispose of and manage all such estate and effects according to law, and for the best interests of the ward, and faithfully to discharge his trust in relation thereto;

"Third. To render an account, on oath, of the property in his hands, including the proceeds of all real estate sold by him, and of the management and disposition of all the property, within one year after his appointment, and at such other times as may be required by law or as the court shall direct.

"Fourth. At the expiration of his trust, to settle his accounts with the judge, or with the ward, or his legal representatives, and to pay over and deliver all the estate and effects remaining in his hands, or due from him on such settlement, to the person or persons who shall be lawfully entitled thereto;

"It is provided, however, if the trust extends solely to the guardianship of the person of the minor, the guardian shall not be required to give bond." (Sec. 3067, as amended by L. 1925, Act 42 and by L. 1929, Act 169.)

There can, of course, be no question that circuit judges are given jurisdiction to appoint guardians of minors "according to law." Such is evident from the first of the sections last above quoted. It may be said that "according to law" means unless there is some other method provided by law for their appointment, as, for instance, when a father, under section 3068, makes a testamentary appointment of a guardian for any of his minor children. This section and the one following it are as follows:

"Every father may, by his last will in writing, appoint a guardian or guardians for any of his children, whether born at the time of making the will or afterwards, to con-

tinue during the minority of the child, or for any less time, and every testamentary guardian shall have the same powers, and shall perform the same duties, with regard to the person and estate of the ward, as a guardian appointed by the judge." Sec. 3068.

"Every testamentary guardian shall give a bond in like manner, and with like condition, as is hereinbefore required of a guardian appointed by the judge, provided that when the testator in the will appointing the guardian shall have ordered or requested that no bond shall be given, the bond shall not be required, unless from a change in the situation or circumstances of the guardian, or for other sufficient cause, the judge shall think proper to require it." Sec. 3069.

It is clear from the first of these sections that the legislature intended to confer upon the father of a minor child the absolute right to appoint by will a guardian for the person and estate of such child. Whenever the father exercises this right the appointment of the guardian becomes absolute and circuit judges have no power to make another and different appointment. Nor is it essential to the establishment of the legal status of the father's selection that judicial sanction be given it. So solicitous, however, was the legislature for the welfare of the minor that notwithstanding the father was also given the right to order or request that the guardian appointed by him be exempt from giving bond the circuit judge was nevertheless given the power to require a bond if for any sufficient reason he deemed one advisable.

If it appeared with equal certainty that the legislature intended that the status of the legitimate father of a minor child should be as finally and definitely fixed by section 3033 as is the status of a testamentary guardian by section 3068, the position of Desmond Stanley might have to be sustained. This intent, however, when other related sections are considered, does not appear.

Section 3065 unmistakably confers upon circuit judges

the power not only to appoint but to nominate guardians of minors who are under sixteen years of age. No exception is expressly made of minors who have living fathers. Unmistakably also, the right is given to minors above the age of sixteen years to select their own guardians, subject to the approval of the judge. Again, no exception is made of minors who have living fathers. If it had been the purpose of the legislature to exclude from the judge's jurisdiction the power to nominate and appoint guardians for minors under sixteen years of age in the event such minors had living fathers and if it had been its purpose to exclude from minors upwards of sixteen years of age the right to select their own guardians in the event they had living fathers it would have distinctly expressed its purpose and would not have left it to a vague inference. The failure to express any such purpose indicates that the legislature did not consider section 3033 the equivalent of the absolute appointment of the father as the guardian of his minor children without the necessity of judicial sanction and supervision. If this had been its conception of the effect of this section it would assuredly have definitely excluded from the jurisdiction of circuit judges the appointment of this class of guardians. It also would not have conferred upon minors above the age of sixteen years, without excepting those who have living fathers, the qualified right to make their own selection of guardians.

The question is greatly clarified by section 3066 which relates to the powers and duties of guardians appointed by the judge. Guardians so appointed are given the custody and tuition of their wards and the care and management of their estates during the period designated. Then follows this significant provision: "Provided, however, that the father of the minor, if living, and in case of his death, the mother while she remains unmarried, being themselves respectively competent to transact their own

business, shall be entitled to the custody of the person of the minor, and to the care of his education."

If section 3033 is to be looked upon as a legislative avowal that the legitimate father of every minor child is the guardian of the person of his child it was inconsistent to confer upon the judge, as was done by section 3065, the power to determine whether the father should occupy that position. The power conferred upon the judge is only consistent with a legislative intent to confer upon the father by section 3033 a preferred and not an absolute right to be appointed.

If section 3033 was not considered by the legislature to be in and of itself the appointment of the father as the guardian of the *person and education* of his child but merely indicated a preference, how can it reasonably be argued that in devising a plan for the preservation of the estates of minors, thus surrounding them with every safeguard, it intended to exclude from the plan and its protection all judicial control over the many estates that are owned by minors who have living fathers? It is inconceivable that the legislature intended to expose such estates to so great a hazard. It did not do so in the case of testamentary guardians but left it to the circuit judge to decide whether they should give security for the faithful discharge of their trust, the request of the testator to the contrary notwithstanding.

In order to bring the question closer, let us suppose that the portion of section 3033 which relates to the guardianship of a legitimate father over the property of his minor children, instead of being, as it is, a portion of the section embodied in the chapter on children, had in substance been made a part of section 3064, which is one of the sections in the chapter on guardians and wards. Section 3064 would then be in something like this form: "Circuit judges shall have jurisdiction to appoint guardians

to minors and others according to law, provided, however, the legitimate father of minors shall be the natural guardian of their property." If this were the form of the statute, would it, reasonably construed in connection with the provisions of other statutes relating to the same subject and which are in juxtaposition to it, sustain the contention that the father was constituted the guardian of the property of his minor children and that no judicial action was necessary or authorized to confirm him in that position? We think not. It would be more reasonable and more in harmony with the manifest desire of the legislature to protect the interests of all minors to say that the father was not by the statute made the guardian of the property of his minor children but merely preferred, leaving it to the sound discretion of the circuit judge to decide whether the welfare of the minor justified his appointment. Section 3033 should, of course, be construed as though it were a part of the same chapter as the other sections we have quoted and discussed.

There is another reason why we think the property of a minor born in lawful wedlock should not be delivered to the father unless he has first been duly appointed guardian of his child's estate by a court of competent jurisdiction. What is now section 3033, so far as it relates to the guardianship of the legitimate father of a minor child over the property of such child, first became the law of Hawaii in 1846. (See Stat. Laws of His Majesty, Kamehameha III, 1845-1846, Sec. VII, p. 60.) Speaking of the husband of a valid marriage and the minor children of such marriage it is declared in this section that "he shall be the natural guardian of their persons and of their property." This is the identical language used in section 3033. In 1851 an Act regulating guardians and wards was enacted. This Act creates a comprehensive and admirable plan, identical in many respects with the plan now in force, for the pro-

tection of the estates of minors. The wise purpose of the lawmaking body in establishing this plan is indicated by the preamble, which is as follows: "Whereas, by the common law of this kingdom guardians have, from time immemorial, possessed and exercised the absolute right to dispose of the real and personal estate of their wards, as might suit their own will, and whereas it is proper that the rights of guardians should be abridged and more clearly defined: Therefore:—Be it enacted by the Nobles and Representatives of the Hawaiian Islands in legislative council assembled:" This purpose would fail of complete accomplishment if it was the legislative intent to exclude from the plan which it devised the estates of minors having living fathers. If this was its intent the estates of such minors would be left outside of the protection given the estates of other minors and left to the uncontrolled management of their fathers. It certainly was not the purpose of the lawmaking body of 1851 or of subsequent legislatures to give protection only to the estates of bastards and orphans. Manifestly the legislative intent of 1851 was either to repeal the clause of section VII of 1845, above quoted, or to construe it as we have construed it.

It is our conclusion that the legacy in question should be paid to a duly appointed, qualified and acting guardian, appointed by a court having the power to make such appointment.

Judgment in conformity with this opinion will be signed upon presentation.

*Prosser, Anderson & Marx* and *F. S. Wood* for the executor.

*Smith, Warren, Stanley & Vitousek* for Desmond Stanley.

DISSENTING OPINION OF PARSONS, J.

I respectfully dissent. The provision of section 3033,

R. L. 1925, that the father of legitimate children "shall be the natural guardian of their persons and of their property" was enacted April 27, 1846, as part of section VII of Article I of chapter IV of an Act to organize the executive departments, and appears to have been, to the extent above quoted, merely declaratory of the common law of the Kingdom of Hawaii as it then existed. The powers of a natural guardian then included, among other things, the control and management of his ward's property. (See *Lot Kamehameha* v. *J. D. Kahookano, et al.*, 2 Haw. 118, 122, decided in 1858, and *Thurston* v. *Bishop,* 7 Haw. 421, 435, decided in 1888.) The Act of 1846 above referred to was known as Act 2, Kamehameha III. The "Act to organize the judiciary department," known as Act 3, Kamehameha III, was passed the following year, namely on September 7, 1847, and contained certain provisions relative to guardianship in chapter IV, the caption of which is "Practice of the courts of record." Article III of said chapter IV is entitled "Of the judicial powers and duties at chambers." Sections V, XIII, XIV, XVI and XVIII of said article III provide as follows:

"Section V. It shall in like manner be incumbent on the person entitled and desirous to have the guardianship of the person of any minor child or infant under the age of fourteen years, and the custody and care of the property of any such child, to apply therefor by petition to the chief justice of the superior court, or some other judge of a court of record at chambers, who shall upon citation of next of kin, and if necessary of witnesses, have power to confer such guardianship, and again on cause shown, to remove from office the guardian so appointed. He shall also have power upon application and cause shown on citation, to appoint guardians *ad libitum,* in cases in which minor children or their property are involved before the courts of record."

"Section XIII. In all cases of guardianship, the following order of priority shall be observed: 1. The father of the infant: 2. If there be no father, the mother: 3. If there be no father or mother, the nearest and eldest relative of full age, not being under any legal incapacity; and as between relations of the same degree of consanguinity, males shall be preferred: 4. If there be no father, mother, or other competent relative, any other competent and friendly person."

"Section XIV. The judge appointing administrators and guardians shall always exact bond and security of administrators adequate to secure against fraudulent misapplication of the assets, and of guardians against the squandering and misapplication of the ward's inheritance."

"Section XVI. It shall not be lawful to exact bond and security of the executor of a will, nor of the guardian appointed by a will."

"Section XVIII. They shall have full powers to compel executors, administrators and guardians to the performance of their trusts, and to require them to give account of their administration. They may in case of the moral unfitness or turpitude of the executor to any will appearing after letters testamentary granted, or in case of the death or surrender, or wrongful absconding of any such executor, upon satisfactory proof, appoint any suitable person applying or consenting, administrator *de bonis non administravit,* annexing to the letters of administration the testator's will, to be scrupulously followed by such administrator. And they may in like manner, and for the like causes, supersede any guardian appointed by will or by letters of guardianship."

That the above quoted sections of the Act of September 7, 1847, with reference to judicial powers and duties at chambers, were not construed to repeal or amend the pro-

visions of the Act of April 27, 1846, with regard to the father's natural guardianship of the property of his child nor to deprive the natural guardian of the powers above referred to, is shown by the opinions in the cases in 2 and 7 Hawaii, above cited. Quoting from the opinion in *Thurston* v. *Bishop, supra,* on page 435, "In *E. K. Laanui* vs. *Puohu, et al.,* 2 Hawn., 162, the supreme court, per Allen, C. J., said: 'By the common law of this Kingdom, prior to the enactment of a law regulating guardians and wards, approved 4th August, 1851, guardians had from time immemorial possessed and exercised the absolute right to dispose of the real and personal estate of their wards as might suit their own will.' The case of *Lot Kamehameha* vs. *J. D. Kahookano et al.,* 2 Hawn., 118, has greater significance, for the plaintiff is the same person from whom defendants claim in the case at bar. Here Kekuanaoa was not the probate guardian of Lot Kamehameha, but he was his father, and Judge Robertson, for the court, says as against the objection made that he was not the guardian of the plaintiff's estate and could not make a legal dedication of the right of way in question: 'that Governor Kekuanaoa, in 1848, as the natural guardian of the plaintiff, rightfully had and exercised, under the law of this Kingdom, the control and management of the plaintiff's property, is, we think, too clear a proposition to admit of a question.' " Under the opinions last above quoted the power of a natural guardian over the property of his ward continued at least until the enactment of the statute of 1851 above referred to. That the Act of 1851 repealed or amended the Act of 1846 is not decided by either of the two cases above cited. Upon the enactment of the Code of 1859 both the portion of the Act of April 27, 1846, and the Act of September 7, 1847, above referred to, were expressly repealed. See C. C., Sec. 1491. Section VII of article I, chapter IV of the Act of 1846 above cited, with

only slight changes in its phraseology and with no change in the portion with which we are now concerned, was then reenacted as section 1288, C. C. 1859. The Act approved August 4, 1851, became chapter XXIX, entitled "Of guardians and wards," of C. C. 1859. The provisions of the Civil Code above referred to all became effective at the same time.

If the Act of 1847, as appears to have been assumed in the two cases above referred to, did not curtail the power of natural guardians over the property of their wards, what other and substantially different provisions of the Act of 1851 or of its subsequent amendments have expressly or by implication produced that effect? In the preamble to the Act of 1851, quoted in the majority opinion, the only rights of guardians therein referred to requiring abridgment and clear definition are the rights theretofore possessed of *disposition* of their wards' real and personal estates. At a time (1884) subsequent to the enactment of the statute last above referred to it was held by a single justice of this court that "a father has no authority as such to lease his children's lands" (*Hanuna* v. *Unna*, 6 Haw. 485), and the case last above cited was later (1905) followed by this court in *Iona* v. *Uu*, 16 Haw. 432. Some support is thus given to the view that there has been judicial recognition of the fact that the former powers of the natural guardian of a ward's property have been abridged at least in so far as the "absolute right to dispose" of the same is concerned—though the decisions above referred to say nothing about former powers or their abridgment, and the above quoted portion of the decision of 1884 cites in its support only a passage from the text of Washburn on Real Property which was based upon decisions in jurisdictions having a different common law and statutory background from that here involved. However, the question of the natural guardian's right to *dispose* of his

ward's property is not now before us. We are presently concerned only with his right to the *custody* of the same. The above quoted preamble expresses no purpose to abridge this right and even if it did express such purpose in clear and unequivocal terms, the purpose could only be effected by statutory enactment. Let us examine the body of the statute itself, following the enacting clause, to see if such purpose, if it existed, was there carried out. Sections of the Act of 1851, later amended as set forth in the majority opinion, are as follows:

"Section 1. That any judge of the superior court of law and equity, when it shall appear to him necessary or convenient, may appoint guardians to minors and others, being inhabitants of or residents in any part of this kingdom, or who may reside without this kingdom, and have any estate within the same.

"Section 2. Any circuit judge of this kingdom may, when it shall appear to him necessary or convenient, appoint guardians to minors and others, being inhabitants of or residents in the island in which he is a judge.

"Section 3. If the minor is under the age of thirteen years, the judge of probate may nominate and appoint his guardian, and if he is above the age of thirteen years, he may nominate his own guardian, who, if approved of by the judge, shall be appointed accordingly, and if the guardian, nominated by such minor shall not be approved by the judge, or if the minor shall reside without this kingdom, or if after being cited by the judge, he shall neglect to nominate a suitable person, the judge may nominate and appoint the guardian, in the same manner, as if the minor were under the age of thirteen years.

"Section 4. Every guardian, appointed as aforesaid, shall have the custody and tuition of the minor and the care and management of his estate, and shall continue in office, until the minor shall arrive at the age of twenty

years, or until the guardian shall be discharged according to law; provided, however, that the father of the minor if living, and in case of his death, the mother, while she remains unmarried, being themselves respectively competent to transact their own business, shall be entitled to the custody of the person of the minor, and to the care of his education."

Section 5. (Except for subsequent amendments with which we are not now concerned, this section is substantially as set forth in section 3067, R. L. 1925, quoted at length in the majority opinion.)

Sections 6 and 7. (These sections are substantially as now provided by sections 3068 and 3069, R. L. 1925, quoted in the majority opinion.)

None of the foregoing sections of the Act of 1851 expressly repeals any former provision, and the Act as a whole contains no general or specific repealing clause. It is claimed in effect that section VII of article I of chapter IV of the Act of 1846 (which with its amendments, after many subsequent reenactments, is now section 3033, R. L. 1925) is inconsistent with section IV above quoted of the Act of 1851 (now with later amendments section 3066, R. L. 1925), and that the latter provision shows a legislative intent to repeal, amend or construe the former to the extent of taking from natural guardians their right to the custody of their wards' property; but there is no irreconcilable conflict between the two sections and their legislative history as hereinabove set forth forbids such construction. Effect therefore should be given to the still existing provision that the father is the natural guardian of his children's property and this can be done by affirming his right to the custody of the same at least until the jurisdiction of the court has been successfully invoked under the later provisions.

For the reasons above set forth I believe that upon the

agreed statement of facts judgment should be for the natural guardian.